IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEBRASKA

```
UNITED STATES OF AMERICA,       )
                                )
              Plaintiff,        )       4:08CR 3064
                                )
        v.                      )
                                )
                                )
BERNE PERKINS,                  )       REPORT, RECOMMENDATION
                                )            AND ORDER
              Defendant.        )
```

Defendant is charged with possessing an unregistered firearm, a silencer, in violation of 26 U.S.C. §§ 5841, 5861(d), and 5871. He has filed a motion to dismiss the indictment and a motion to suppress evidence. A hearing on these motions was held before me on August 20, 2008, at the conclusion of which I took the motions under advisement. I now recommend that both motions be denied.

FACTS — MOTION TO SUPPRESS

On February 7, 2007 defendant was interviewed at the Gering, Nebraska police station. He went there at the request of Sgt. Tim Lordino of the Gering Police Department in connection with a recent shooting. The alleged shooter had reported to police that he had received the gun and a silencer from the defendant. Sgt. Lordino contacted the Bureau of Alcohol, Tobacco, and Firearms, and when two ATF agents arrived, they all drove to defendant's place of employment. Lordino entered and requested to see defendant; he was advised defendant was then working in Torrington, Wyoming, about 45 minutes away. Defendant's supervisor/dispatcher telephoned him, and

Lordino requested that defendant meet him at the police department's offices. Defendant agreed to do so.

Defendant arrived at the police department offices later that afternoon and entered the building. He was escorted to an interview room at approximately 3:57 p.m. The room was equipped with a video recorder, and all of the ensuing events were recorded. The recording equipment simultaneously broadcast the events to another room which was occupied by the officers not in the interview room, so they observed all the goings on in the interview room.

The interview proceeded in three stages, as follows. After getting some biographical information, Sgt. Lordino asked about defendant's knowledge of the shooting suspect. Following that conversation, which lasted approximately 17 minutes, Sgt. Lordino advised defendant that he needed to step out of the room to "get something." Lordino left the room, and about two minute later ATF agents Ronald E. Meadows and Paul White entered the room. Agent White advised defendant that he was not under arrest, did not have to talk with them, and that he could leave at any time. The agents interviewed the defendant about the suspect and about the gun and suppressor/silencer that had been used in the shooting, and defendant's prior ownership of them. After approximately 40 minutes, the ATF agents requested that defendant give them permission to search his house to ensure that no other similar items were there; defendant agreed. The agents left the room. Sgt. Lordino returned and continued to speak with the defendant about the suppressor/silencer. During this third portion of the interview Sgt. Lordino confronted defendant and told defendant that he needed defendant to be "100% honest" with him, and he did not believe what the defendant was saying. Lordino terminated the interview approximately 50 minutes after it began.

Defendant was not, at any time, read his rights under Miranda v. Arizona, 384 U.S. 436 (1966); he was, however, advised that he was not under arrest, did not have to answer questions, and could leave at any time he chose. During the interview the defendant was not threatened or coerced in any manner. He was fully cooperative with Sgt. Lordino and the agents. He was not promised anything in return for his information or cooperation. He never refused to answer the questions put to him. He never requested an attorney. He never requested that the interview be stopped. None of the questioners raised his voice or otherwise acted in an intimidating manner at any time. Defendant was not arrested at the conclusion of the interview.

## DISCUSSION —- MOTION TO SUPPRESS

"Miranda warnings are required only when a suspect is in custody and is about to be interrogated." United States v. Caldwell, 954 F.2d 496, 499 (8th Cir.) (citing Rhode Island v. Innis, 446 U.S. 291, 300 (1980)), cert. denied, 506 U.S. 819 (1992).

> An individual is "in custody" when he has been formally arrested or his freedom of movement has been restrained to a degree associated with a formal arrest. [citations omitted]. In United States v. Griffin [922 F.2d 1343 (8th Cir. 1990)] we enumerated six indicia of custody:
>
>> (1) whether the suspect was informed at the time of questioning that the questioning was voluntary, that the suspect was free to leave or request the officers to do so, or that the suspect was not considered under arrest; (2) whether the suspect possessed unrestrained freedom of movement during questioning; (3) whether the suspect initiated contact with authorities or voluntarily acquiesced to official request to respond to questions; (4) whether strong arm tactics or deceptive stratagems were employed during questioning; (5) whether the atmosphere of the questioning was police dominated; or, (6) whether the

3

> suspect was placed under arrest at the termination of the questioning.
>
> Id., 922 F.2d at 1349. The presence of the first three indicia tends to mitigate the existence of custody at the time of questioning; the presence of the last three indicia aggravate the existence of custody. Id.

United States v. Wolk, 337 F.3d 997, 1006 (8th Cir. 2003); United States v. Brown, 990 F.2d 397, 399 (8th Cir. 1993).

The defendant was not in custody at the time of the interview. He voluntarily came to the police department offices at the request of Sgt. Lordino. There is no evidence of any coercion or overreaching on the part of law enforcement. Although he was not explicitly given freedom to move about the police station, he was not under any restraint within the interview room. He was informed that he did not have to answer the officers' questions and could terminate the interview and leave. No strong-arm tactics were used in the interview, but Sgt. Lordino did falsely say to the defendant that another person besides the suspect had told Lordino that the suspect had received the gun and the suppressor/silencer from defendant; there is no evidence, however, that this deception overbore the defendant's will to not speak with him. The atmosphere of the interview was cordial at all times, and while one might conclude that it was "police dominated," if so, it was only to a minor degree. Defendant was not arrested at any time, and in fact gave agents White and Meadows permission to search his house after the interview, agreeing to lead them there in his vehicle.

Because defendant was not "in custody," he was not entitled to be read his Miranda rights. In addition, because there was no overreaching on the part of the officers, I conclude that the interview and all the statements therein were made voluntarily. The motion to suppress should be denied.

MOTION TO DISMISS

Defendant claims that he had a Second Amendment right to possess the suppressor/silencer, relying on the recent Supreme Court decision in District of Columbia v. Heller, ___ U.S. ___, 128 S. Ct. 2783 (2008). The defendant argues that the statutes pursuant to which he is being prosecuted, 26 U.S.C. §§ 5841, 5861(d), and 5871, are unconstitutional, because they infringe on an individual's right to possess firearms in his home for self defense. Filing 17 at 2. The argument is a broad one, implying that Heller struck down all regulations or registration requirements restricting the ownership of weapons.

The Eighth Circuit Court of Appeals recently rejected such a broad attack in a case charging the unlawful possession of a machine gun and an unregistered sawed off shotgun. It stated:

> Fincher's possession of firearms is, as a matter of law, not reasonably related to a well regulated militia and is thus not protected by the Second Amendment.
>
> In reaching this conclusion, we have taken into account the Supreme Court's recent decision in District of Columbia v. Heller, ___ U.S. ___, 128 S. Ct. 2783, (2008), in which the Court held that the District of Columbia's complete prohibition on the possession of usable handguns in one's home violated the Second Amendment. Id. at 2817-18. In holding that the Second Amendment guarantees "the individual right to possess and carry weapons in case of confrontation," Id. at 2797, the Court also stated that the right to possess firearms is not beyond the reach of all government regulation. Id. at 2799, 2816 ("Like most rights, the right secured by the Second Amendment is not unlimited. From Blackstone through the 19th-century cases, commentators and courts routinely explained that the right was not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose.").
>
> In discussing the limitations the government can place on an individual's right to possess firearms, the Court

5

noted that [United States v. Miller, 307 U.S. 174 (1939)] does not protect "weapons not typically possessed by law-abiding citizens for lawful purposes, such as short-barreled shotguns." Heller, 128 S.Ct. at 2815-16. The Court also articulated a nonexclusive list of what it viewed to be acceptable government regulation of firearms:

> [T]he majority of the 19th-century courts to consider the question held that prohibitions on carrying concealed weapons were lawful under the Second Amendment or state analogues. Although we do not undertake an exhaustive historical analysis today of the full scope of the Second Amendment, nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms. We also recognize another important limitation on the right to keep and carry arms. Miller said, as we have explained, that the sorts of weapons protected were those "in common use at the time." We think that limitation is fairly supported by the historical tradition of prohibiting the carrying of "dangerous and unusual weapons."

Id. at 2816-17 (internal citations and footnote omitted).

Accordingly, under Heller, Fincher's possession of the guns is not protected by the Second Amendment. Machine guns are not in common use by law-abiding citizens for lawful purposes and therefore fall within the category of dangerous and unusual weapons that the government can prohibit for individual use. Furthermore, Fincher has not directly attacked the federal registration requirements on firearms, and we doubt that any such attack would succeed in light of Heller. Accordingly, because Fincher's possession of guns is not protected by the Second Amendment, the district court did not abuse its discretion in preventing him from arguing otherwise to the jury.

United States v. Fincher,      F. 3d     , 2008 WL 3367573 (8th Cir. August 13, 2008).

No case has been cited by either party considering <u>Heller</u> in a prosecution for possession of an unregistered silencer or suppressor, and I have found none.  I have no doubt, however, that if confronted with the issue, the Eighth Circuit would apply the same rationale as that applied in <u>Fincher</u>.  That is, silencers/suppressors "are not in common use by law-abiding citizens for lawful purposes and therefore fall within the category of dangerous and unusual weapons that the government can prohibit for individual use." <u>Id.</u>  I also agree that the defendant's challenge to the registration requirement is without merit in light of the above-quoted passages from <u>Heller</u> and <u>Fincher</u>.

IT THEREFORE HEREBY IS RECOMMENDED to the Hon. Richard G. Kopf, United States District Judge, pursuant to 28 U.S.C. §636(b)(1)(B) that the defendant's motion to suppress, filing 18, and defendant's motion to dismiss, filing 16, both be denied.

The parties are notified that failure to object to this recommendation as provided in the local rules may result in a waiver of the right to appeal the district judge's adoption of findings in the recommendation.

FURTHER, IT IS ORDERED that trial of this matter is set to commence at 9:00 a.m., December 1, 2008, for a duration of three days before the Honorable Richard G. Kopf in Courtroom 1, United States Courthouse and Federal Building, 100 Centennial Mall North, Lincoln, Nebraska.  Jury selection will be held at commencement of trial.

Dated September 12, 2008.

BY THE COURT

s/ *David L. Piester*
David L. Piester
United States Magistrate Judge